UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

R.S., *et al.*,

                              Plaintiffs,

    -against-                                        1:17-CV-0501 (LEK/CFH)

BOARD of EDUCATION SHENENDEHOWA
CENTRAL SCHOOL DISTRICT, *et al.*,

                              Defendants.
────────────────────────────────────────

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Pro se plaintiffs R.S. and E.S. commenced this action on May 9, 2017, against the Shenendehowa Central School District Board of Education, Chief State Review Officer ("SRO") of the New York State Education Department Justyne Bates, and Commissioner of the State University of New York MaryEllen Elia, on behalf of their minor son, A.S. Dkt. Nos. 1 ("Complaint"), 10 ("Amended Complaint"). Plaintiffs allege violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and several provisions of New York State law. Am. Compl. Presently before the Court is SRO Bates and Commissioner Elia's motion to dismiss. Dkt. Nos. 35 ("Motion"), 35-3 ("Memorandum"). For the reasons that follow, the Motion is granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background

A.S. is a six year old boy with Autism Spectrum Disorder ("ASD"). Am. Compl. ¶ 1. Plaintiffs allege that Defendants have failed to provide A.S. with a free appropriate public education ("FAPE") as required under state and federal law. Id. ¶¶ 55–59. Plaintiffs seek declaratory and injunctive relief, compensatory damages for educational therapy they have provided and/or paid for, and legal fees for their efforts and expenses in bringing this suit. Id. ¶¶ 118–45.

A.S. initially received special education services in late 2012, which were terminated when Plaintiffs moved out of the country. Dkt. No. 35-2 ("SRO Decision") at 2. In June 2014, after returning to the United States, A.S. was evaluated and found eligible for special education and related services. Id. at 2–3. Over the next year, A.S.'s program was modified by the Committee on Preschool Special Education ("CPSE") multiple times. Id. at 3–4. In October 2015, Plaintiffs expressed concerns about A.S.'s placement, Am. Compl. ¶ 10; SRO Decision at 4–5, and executed a due process complaint notice, Am. Compl. ¶ 13; SRO Decision at 5. They executed a second due process complaint notice in November 2015. Am. Compl. ¶ 14; SRO Decision at 5. In response to these complaints, Plaintiffs met with a subcommittee of the Committee on Special Education ("CSE") on November 23, 2015, and the CSE modified A.S.'s services to address Plaintiffs' complaints. SRO Decision at 5–6; see also Am. Compl. ¶ 17 ("[A]s a result of the resolution agreement for the due process complaint[,] A.S. returned to Newmeadow as a general education student.").

In spring 2016, a meeting was held to complete an annual review and develop an individualized education plan ("IEP") for A.S. Am. Compl. ¶ 22; SRO Decision at 6. On August 5, 2016, Plaintiffs filed another due process complaint notice, Am. Compl. ¶ 31; SRO Decision at 7, alleging that A.S. "could not take advantage of an education not grounded in the principles of [Applied Behavior Analysis ("ABA")] [and] more specifically it was <u>unconditionally</u> clear that [the student] needed a comprehensive ABA program in order to make progress," SRO Decision at 7 (second and third alteration in original) (emphasis in original). A hearing before an impartial hearing officer ("IHO") regarding this complaint was held in October 2016. Am. Compl. ¶ 42; SRO Decision at 9.

On December 30, 2016, the IHO ruled that the School District had provided A.S. with a FAPE as required by law. Am. Compl. ¶ 43; SRO Decision at 9. Plaintiffs appealed, and SRO Bates determined on April 6, 2017, that, "contrary to the IHO's determination, the district failed to offer the [A.S.] a FAPE in the LRE [the least restrictive environment] for the 2016-17 school year." SRO Decision at 43; <u>see also</u> Am. Compl. ¶ 52. SRO Bates ordered the School District to determine the extent to which A.S. should be placed with non-disabled peers in order to satisfy the LRE requirement under the IDEA. Am. Compl. ¶ 52; SRO Decision at 43. In this action, Plaintiffs seek review of SRO Bates's decision regarding A.S.'s IEP and the School District's actions. Am. Compl.

**B. Procedural History**

Plaintiffs commenced this action on May 9, 2017, Compl., and submitted the Amended Complaint on July 7, 2017, Am. Compl. On August 3, 2017, Plaintiffs submitted an ex parte motion for a preliminary injunction. Dkt. No. 27 ("Preliminary Injunction Motion"). Plaintiffs

3

sought payment for "reasonable increases in cost of living, all rent increases necessary to be enrolled in the Newton[, Massachusetts] Public Schools-School District[,] and income and benefits lost . . . as a result of relocation." Id. at 5.

The Court denied the Preliminary Injunction Motion on August 7, 2017. Dkt. No. 29 ("August Order"). The School Board answered the Amended Complaint on August 11, 2017, Dkt. No. 36 ("District Answer"), and SRO Bates and Commissioner Elia moved to dismiss the same day, Mot.

### III. LEGAL STANDARD

#### A. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not

demonstrated that he is entitled to relief, and the action is subject to dismissal. Id. at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original) (quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001)). Presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Id.

### B. Subject Matter Jurisdiction

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187–88 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107–08 (2d Cir. 1997). "If [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The party asserting subject matter jurisdiction carries the burden of proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113.

## IV. DISCUSSION

### A. SRO Bates

SRO Bates moves to dismiss the claims against her under the doctrine of judicial immunity. Mem. at 10. "It is well-established that judicial officers are absolutely immune 'for

their judicial acts.'" B.J.S. v. State Educ. Dep't./Univ. of the State of New York, 699 F. Supp. 2d 586, 594 (W.D.N.Y 2010) (quoting Stump v. Sparkman, 435 U.S. 349, 355–56 (1978)). Absolute judicial immunity applies even against "[a]llegations of bad faith, malice or that the officer acted 'in error . . . or was in excess of his authority.'" Id. (omission in original) (quoting Mireles v. Waco, 502 U.S. 9, 13 (1991)). Immunity is overcome only in cases of "'non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity,' or 'actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11–12).

"'The doctrine of absolute immunity has been extended to certain others who perform functions closely associated with the judicial process,' including 'administrative officials exercising independent quasi-judicial powers.'" Id. (quoting B.D.S. v. Southold Union Free Sch. Dist., Nos. 08-CV-1319/-1864, 2009 WL 1875942, at *19 (E.D.N.Y. June 24, 2009)). Courts have granted immunity to New York SROs in cases challenging denials of FAPEs, where the SRO "review[ed] administrative appeals from decision[s] of impartial hearing officers and render[ed] . . . 'independent decision[s]' under [IDEA] and New York Law." Id. (quoting B.D.S., 2009 WL 1875942, at *19).

Plaintiffs bring each of their ten causes of action against SRO Bates. Am. Compl. ¶¶ 55–117. In light of Plaintiffs' pro se status, the Court "must construe [the Amended Complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138, 145–46 (2d Cir. 2002) (alterations in original) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). Plaintiffs' claims are firmly grounded in SRO Bates's judicial actions and the exercise of her quasi-judicial powers. Specifically, Plaintiffs allege that SRO Bates made several erroneous determinations and

6

decisions, including (1) "render[ing] the sustainment of the appeal completely moot" by failing to provide any relief, Am. Compl. ¶ 55, (2) inaccurately determining when the Plaintiffs began "home-based ABA services," id. ¶ 56, (3) determining that an IEP other than the most recent IEP was controlling, id. ¶ 57, (4) "erroneously applying procedural safeguards," id. ¶ 60, (5) failing to award "pro se legal fees," id. ¶ 68, (6) failing to find that the IHO was biased, id. ¶ 74, (7) determining erroneously that Plaintiffs agreed with the IHO decision, id. ¶ 75, (8) "contort[ing]" facts "to disfavor the parents and favor the district," id. ¶ 77, (9) failing to reverse the IHO's "refus[al] to accept nearly all of [Plaintiffs'] exhibits into evidence," id. ¶ 78, (10) "uphold[ing] the IHO decision that [listing a specific] methodology is not required [in an IEP]," id. ¶ 88, (11) "erroneously find[ing] that Present Levels of Performance in A.S.['s] IEP for the 2016–2017 school year was not an issue raised in the due process complaint," id. ¶ 102, and (12) "dismiss[ing Plaintiff's] complaint that the district committed an excessive number of procedural violations," id. ¶ 114. Each allegation concerns actions that SRO Bates took in her official judicial capacity. Therefore, SRO Bates is entitled to absolute judicial immunity on Plaintiffs' claims.

Although not included in the Amended Complaint, Plaintiffs do raise additional allegations and some arguments against Bates's absolute judicial immunity in their opposition papers. Dkt. No. 50 ("Opposition"). While a court may generally only look to the pleadings when reviewing a motion to dismiss, "the mandate to read the paper of *pro se* litigants generously makes it appropriate to consider plaintiff[s'] additional materials, such as [their] opposition memorandum." Gadson v. Goord, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)).

In their Opposition, Plaintiffs allege that SRO Bates violated the Fourteenth Amendment of the United States Constitution because she enforced New York State education policies that are "loosley [sic] written and unconstitutionally vague," Opp'n at 10, and allow for children with ASD to be subjected to "discrimination by segregation," id. at 16. Even if the Court were to find that New York State's education policies violated the Fourteenth Amendment, SRO Bates is still entitled to judicial immunity for her decisions enforcing those policies because issuing a decision—even one that violates federal law—is clearly an exercise of her quasi-judicial powers.

Plaintiffs raise two additional arguments in an attempt to overcome SRO Bates's immunity. First, they claim that SRO Bates is not entitled to absolute immunity in cases of discrimination. Id. at 21–23.[1] However, the Second Circuit has found that judicial immunity applies even in cases of alleged discrimination. E.g., Curto v. Siwek, 322 F. App'x 62, 63 (2d Cir. 2009) (holding that a state court judge had absolute immunity where plaintiff alleged she had "engaged in egregious discrimination against plaintiff"); Applewhite v. Briber, 506 F.3d 181, 181–82 (2d Cir. 2007) (affirming the application of judicial immunity to dismiss plaintiff's claims of racial discrimination against a judicial officer). Plaintiffs further claim that SRO Bates is not entitled to judicial immunity because immunity is not available to a judicial officer who "fails to properly act within their [sic] capacity and use proper legal precedent or procedure to render a decision." Opp'n at 24. However, the Supreme Court has held that "[judicial] immunity applies even when the judge is accused of acting maliciously and corruptly." Imbler v. Pachtman,

---

[1] Plaintiffs more narrowly claim that state actors are not entitled to sovereign immunity when sued for discrimination. Opp'n at 21. Because the Court is obligated to "liberally construe[]" pro se plaintiffs' pleadings, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the Court construes Plaintiffs' discrimination argument as a response to SRO's Bates's judicial immunity argument.

424 U.S. 409, 418 n.12 (1976) (citing Pierson v. Ray, 386 U.S. 547, 553–54 (1967)). Therefore, even if SRO Bates did discriminate against Plaintiffs and applied incorrect legal precedent to make her decision, she is still entitled to judicial immunity.[2]

By suing SRO Bates for alleged legal and procedural errors, Plaintiffs appear to be attempting to appeal her decision. While SRO Bates is immune from such a suit, Plaintiffs may effectively appeal her decision in an action against the School District. Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist., 773 F.3d 372, 376 (2d Cir. 2014) ("The SRO's decision may be appealed via civil suit in New York State Supreme Court or federal district court.") (citing N.Y. Educ. Law § 4404(3); 20 U.S.C. § 1415(i)(2)(A)); see also Wolfe v. Taconic-Hills Cent. Sch. Dist., 167 F. Supp. 2d 530, 533–35 (N.D.N.Y. 2001) (reversing, in an action against a school district, an SRO's decision on the basis that the decision was not supported by the record); cf. New Paltz Cent. Sch. Dist. v. St. Pierre, 307 F. Supp. 2d 394, 401–02 (N.D.N.Y. 2004) (affirming an SRO's decision in an action commenced by the school district). As discussed below, the Court is granting Plaintiffs leave to amend their Amended Complaint. If Plaintiffs wish to challenge SRO Bates's decision and findings, they must do so by adding these claims against the School District.

**B. Commissioner Elia**

*1. State Law Claims*

Commissioner Elia moves to dismiss Plaintiffs' state law claims as barred by the

---

[2] Because SRO Bates is dismissed on judicial immunity grounds, the Court need not consider the other grounds for dismissal.

Eleventh Amendment. Mem. at 11–12.³ The Eleventh Amendment provides that "[t]he judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974) (collecting cases). Thus, "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). Sovereign immunity applies not only to states themselves, but also to state actors. See, e.g., id. ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). "[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." Id. Sovereign immunity is lost when a state explicitly consents to suit or Congress "unequivocal[ly]" abrogates immunity. Id. at 99.

Because Plaintiffs appear to sue Commissioner Elia in her official capacity as the Commissioner of Education of the State University of New York, Am. Compl. ¶ 7, Plaintiffs' claims are really against the State, and the Court's jurisdiction is curtailed by the Eleventh Amendment. Plaintiffs allege violations of Article 89 of New York State Education Law, N.Y. Educ. Law § 4401 et seq., and Part 200 of New York State Education Department Rules and Regulations, 8 N.Y.C.R.R. § 200.1 et seq. See generally Am. Compl. Because these laws and

---

³ Commissioner Elia argues only that the Eleventh Amendment bars Plaintiffs' state law claims. Mem. at 11. As discussed below, the State has waived sovereign immunity against the remaining claims, and therefore the Court has jurisdiction to adjudicate them.

regulations do not include a "clear waiver of New York's constitutionally guaranteed immunity from suit," Zahran v. N.Y. Dept' of Educ., 306 F. Supp. 2d 204, 209 (N.D.N.Y. 2004) (citing African Am. Legal Defense Fund, Inc. v. N.Y. State Dep't of Educ., 8 F. Supp. 2d 330, 335 (S.D.N.Y. 1998)), the claims are barred by the Eleventh Amendment, and must be dismissed, see French v. New York State Dep't of Educ., No. 04-CV-434, 2010 WL 3909163, at *10 (N.D.N.Y. Sept. 30, 2010) ("Since Article 89 does not contain such a waiver, the Court dismisses Plaintiff's Article 89 claims against Defendant SED."), aff'd, 476 F. App'x 468 (2d Cir. 2011).

In their Opposition, Plaintiffs argue that state law claims against state officials are "not barred by the eleventh amendment [sic] if the claim is regarding discrimination." Opp'n at 21. However, the statutory provisions and cases that Plaintiffs cite involve federal anti-discrimination laws, not state laws. Id. at 21–22 (citing 42 U.S.C. § 2000d-7; A.W. v. Jersey City Public Schs., 341 F.3d 234, 236 (3d Cir. 2003) (discussing immunity against § 504 and IDEA claims)). Plaintiffs are correct that state officials are not immune from claims under federal anti-discrimination laws, but only because Congress explicitly abrogated their immunity in Title VI of the 1964 Civil Rights Act. § 2000d-7 ("A state shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of . . . the provisions of any . . . Federal statute prohibiting discrimination by recipients of Federal financial assistance."). The abrogation under Title VI does not apply to claims of discrimination brought under state law. Plaintiffs' argument that sovereign immunity does not bar federal discrimination claims does not change the Court's conclusion that the state law claims are barred.

### 2. Section 504 Claim

Commissioner Elia moves to dismiss Plaintiffs' claim under § 504 of the Rehabilitation Act for failure to state a claim. Mem. at 12–13. Section 504 proscribes excluding or discriminating against any individual in "any program or activity receiving Federal financial assistance" on the basis of the individual's disability. 29 U.S.C. § 794(a). In order to prove a prima facie violation of § 504, Plaintiffs must prove that (1) A.S. "is a '[disabled] person' under the Rehabilitation Act;" (2) A.S. "is 'otherwise qualified for the program;'" (3) A.S. "is excluded from benefits solely because of his [disability];" and (4) "the program or special service receives federal funding." C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840–41 (2d. Cir. 2014) (alterations in original) (quoting Mrs. C. v. Wheaton, 916 F.2d 69, 74 (2d Cir. 1990)). While the Second Circuit has recognized that a § 504 claim may be brought when a "disabled student was 'denied access to a free appropriate education,'" id. at 841 (quoting S.W. v. Warren, 528 F. Supp. 2d 282, 290 (S.D.N.Y 2007)), "[s]uch a claim . . . requires proof of bad faith or gross misjudgment," id. (citing Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 152 (N.D.N.Y. 1997), aff'd mem., 208 F.3d 204 (2d Cir. 2000)).

There is no dispute that Plaintiffs successfully allege the first, second, and fourth elements of a § 504 claim. However, Commissioner Elia claims that Plaintiffs fail to allege that she "acted in bad faith or with gross misjudgement." Mem. at 12. The Court agrees that the Amended Complaint contains no allegations that Commissioner Elia, or anyone else, failed to provide A.S. with benefits as a means to discriminate against him on the basis of his disability. Because the Court must "consider plaintiff[s'] additional materials," Gadson, 1997 WL 714878, at *1 n.2 (citing Gill, 824 F.2d at 195), the Court will consider the allegation in the Plaintiffs'

Opposition that A.S. was excluded from benefits on the basis of his disability, Opp'n at 22–23. Plaintiffs allege that policies that educate or place children with ASD in a separate environment than non-disabled children is an act of "discrimination by segregation." Id. While Plaintiffs cite a number of sources that allege that such policies harm children with ASD, Plaintiffs do not allege that Commissioner Elia created these policies in "bad faith or with gross misjudgement," as required to state a § 504 claim. C.L., 744 F.3d at 841 (citing Wenger, 979 F. Supp. at 152). Because Plaintiffs do not allege sufficient facts to support their contention that Commissioner Elia discriminated against A.S. on the basis of his disability, the § 504 claim against her is dismissed.

### 3. IDEA Claims

Commissioner Elia moves to dismiss the Plaintiffs' IDEA claims on the basis that, as the Commissioner of the State Education Department, she is not a proper or necessary party to this action. State Mem. at 7–10. She argues that the Commissioner is not a proper party in cases where Plaintiffs seek review of an administrative decision regarding the IEP process. Id. at 8. "[C]ourts have dismissed cases against state educational agencies in which plaintiffs sought review of an administrative decision regarding a particular IEP development process." Andrew M. v. New York State Dep't of Educ., 827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010) (collecting cases); see also B.J.S., 699 F. Supp. 2d at 599 ("[T]he controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the student . . . and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency, in this case the School District, not State Defendants.").

13

Insofar as Plaintiffs seek review of the SRO's decision, e.g., Am. Compl. ¶¶ 56–59, the Court agrees that the Commissioner is not a proper party. However, when a plaintiff "makes particularized allegations regarding a policy alleged to have been affirmatively promulgated by [the State Education Department]," the Commissioner is a proper party. Andrew M., 827 F. Supp. 2d at 141 n.3 ("NYSED is a proper defendant in this action, which challenges a NYSED policy that allegedly interferes with the IEP development process for disabled students in a systemic manner."). Plaintiffs allege in their eighth cause of action that, by not requiring schools to list a specific methodology in the Management Needs section on a student's IEP, the State Education Department failed to provide A.S. (and other children with ASD) a FAPE as required by the IDEA. Am. Compl. ¶¶ 87–101. According to Plaintiffs, A.S. "benefits significantly" from ABA, a specific methodology for teaching children with ASD, and they have requested that it be included in the Management Needs section of his IEP. Id. ¶ 87. However, the State does not require school districts to list specific teaching methodologies on IEPs, and the School District has not included ABA in A.S.'s IEP. Id. Plaintiffs claim that, by not requiring specific methodologies to be listed in IEPs, the State is not providing a FAPE to all students. Id. ¶¶ 90, 97. To the extent the Amended Complaint "state[s] a plausible claim that [the State Education Department's] interference with the IEP process has hampered the progress of" A.S., Andrew M., 827 F. Supp. 2d at 141, the IDEA claims against Commissioner Elia survive dismissal.

### 4. New Claims in Plaintiffs' Opposition

Plaintiffs raise a number of new and novel claims in their Opposition. For example, Plaintiffs argue that New York State education regulations are unconstitutionally vague in violation of the Fourteenth Amendment. Opp'n at 13. While the Court considered Plaintiffs'

additional allegations in their Opposition as supplements to the factual allegations in the Amended Complaint, generally "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) (citing Wright v Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)). In short, Plaintiffs cannot use their Opposition to add new claims to the Amended Complaint. Therefore, the Court will not address any of the new claims alleged in the Opposition but not pleaded in the Amended Complaint. As explained below, the Court is granting Plaintiffs leave to amend. Thus, Plaintiffs are encouraged to plead any additional claims in a second amended complaint.

### C. Leave to Amend

Plaintiffs have not requested leave to amend their Amended Complaint. However, "it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995)). The Court should give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Court recognizes that the Amended Complaint includes no specific allegations against the School District. In dismissing SRO Bates as a defendant and some of the claims against Commissioner Elia, the Court has dramatically reduced the scope of the Amended Complaint. However, some of the dismissed claims against Bates and Elia could be properly brought against the School District. "[W]hen addressing a *pro se* complaint, *generally* a district court 'should not dismiss without granting leave at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cusamano v. Sobek, 604 F. Supp. 2d 416, 462 (N.D.N.Y. 2008) (emphasis in original) (quoting Cuoco v. Moritsugu, 222

15

F.3d 99, 112 (2d Cir. 2000)). Therefore, the Court grants Plaintiffs thirty days to amend the Amended Complaint as to their claims against the School District and the remaining claims against Commissioner Elia.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that defendants Justyne Bates and MaryEllen Elia's Motion (Dkt. No. 35) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that all claims against Bates are **DISMISSED with prejudice** and Bates is **DISMISSED** as a defendant in this action; and it is further

**ORDERED**, that the following claims against Elia are **DISMISSED**: all State Law claims, all claims under § 504 of the Rehabilitation Act, and all claims under the Individuals with Disabilities Education Act, insofar as the claims are requests for review of the SRO's decision; and it is further

**ORDERED**, that Plaintiffs are granted leave to amend their Amended Complaint as to their remaining claims against the School District and Elia. Plaintiffs may file a second amended complaint as set forth above **within thirty days** from the date of the filing of this Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   December 13, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge