UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

A.S., *et al.*,

                     Plaintiffs,

       -against-                       1:17-CV-0501 (LEK/CFH)

BOARD OF EDUCATION
SHENENDEHOWA CENTRAL SCHOOL
DISTRICT, *et al.*,

                     Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs R.S. and E.S. and their minor son, A.S., bring this action, pro se, against the

Shenendehowa Central School District Board of Education ("District") and MaryEllen Elia,

Commissioner of the State University of New York. Dkt. Nos. 1 ("Complaint"), 10 ("First

Amended Complaint" or "FAC"), 76 ("Second Amended Complaint" or "SAC").[1] Plaintiffs

allege violations of the Individuals with Disabilities Act ("IDEA"),[2] 20 U.S.C. § 1400, *et seq.*;

---

[1]  Plaintiffs also initially named Chief State Review Officer ("SRO") Justyn Bates as a
defendant, but the Court has already dismissed with prejudice all claims against Bates. Dkt. No.
71 ("December 2017 Order") at 16.

[2]  Although the Court of Appeals for the Second Circuit has specifically held that
non-lawyer parents do not have the right to represent their children in proceedings before a
federal court, see Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005), the
United States Supreme Court has held that parents have "independent, enforceable rights" under
IDEA, Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 532 (2007).
Therefore, when parents file a complaint on their own behalf as well as on behalf of their minor
child, and the complaint asserts independent claims for reimbursement, as is the case here, they
are entitled to proceed in an action pro se. A.P. v. Woodstock Bd. of Educ., 370 F. App'x 202,
204 n.2 (2d Cir. 2010).

§ 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; the Fourteenth Amendment's vagueness doctrine; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000d-7. SAC. Now before the Court are Defendants' motions for summary judgment. Dkt. Nos. 86 ("Elia SJ Motion"), 86-1 ("Elia Statement of Material Facts" or "Elia SMF"), 86-2 ("Elia Memorandum"), 88 ("District SJ Motion"), 88-6 ("District SMF"), 88-7 ("District Memorandum"). For the reasons that follow, Defendants' Summary Judgment Motions are granted, and the case is dismissed.

## II.    BACKGROUND

### A.  IDEA

IDEA's primary purpose is to ensure students with disabilities receive a free appropriate public education ("FAPE"), that "emphasizes special education and related services designed to meet students' unique needs and prepare them for further education, employment, and independent living." § 1400(d)(1)(A); Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 371 (2d Cir. 2006). IDEA requires schools to maintain a written individualized education program ("IEP") for each student with a disability. § 1414(d). Each student's IEP is developed by the relevant school district's Committee on Special Education ("CSE"), and must be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 207 (1982).

A party may commence an administrative proceeding challenging an IEP as failing to provide a FAPE by filing a written complaint with the relevant school district, which will require an administrative hearing before an Impartial Hearing Officer ("IHO") selected from a list of approved IHOs maintained by the district. § 1415(f). Any party wishing to seek relief from the

IHO's decision may appeal the IHO's findings to the relevant state educational agency. §1415(g). The agency's State Review Officer ("SRO") is then required to conduct an impartial review of the IHO's decision. § 1415(g). If not appealed, the IHO's decision is final. § 1415(i)(1)(A). Further, the SRO's decision is final unless a party to that decision commences, as Plaintiffs have done here, an action in federal district court pursuant to § 1415(i)(2)(A). § 1415(i)(1)(B).

### B. Factual Background

A.S. is a seven-year-old boy with Autism Spectrum Disorder ("ASD"). SAC ¶ 1; Dist. SMF ¶¶ 1–2; Elia SMF ¶ 1. A.S. initially received special education services in late 2012, but these services were terminated when Plaintiffs moved out of the country. Dkt. No. 35-2 ("SRO Decision") at 2; Elia SMF ¶ 3. In June 2014, after returning to the United States, A.S. was evaluated and found eligible for special education and related services. SRO Decision at 2–3; Elia SMF ¶ 4. Over the next year, A.S.'s program was modified by the District CSE multiple times. SRO Decision at 3–4; Elia SMF ¶ 5.

A.S. began the 2015–2016 school year as a kindergarten student attending the District's elementary school. Dist. SMF ¶ 9; SAC ¶ 10. Pursuant to New York Education Law § 3202, A.S. was not of compulsory school attendance age during the 2015–16 school year. Dist. SMF ¶10.

In October 2015, Plaintiffs expressed concerns to the school about A.S.'s placement. SRO Decision at 4–5; SAC ¶¶ 12–13; Elia SMF ¶ 6; Dist. SMF ¶¶ 11–12. The District CSE reconvened and, on October 22, 2015, produced a revised IEP for the 2015–16 school year. IHO Ex. 32. The parents then executed a first due process complaint notice challenging the IEP. SRO Decision at 4–5; SAC ¶¶ 12, 13; Elia SMF ¶ 6; Dist. SMF ¶ 11–12. They executed a second due process complaint notice in November 2015. SRO Decision at 5; SAC ¶ 1; Elia SMF ¶ 7; Dist.

SMF ¶ 13. In response to these complaints, Plaintiffs met with a subcommittee of the CSE on November 23, 2015, and the parties reached a resolution agreement, signed on December 4, 2015, that withdrew the due process complaints regarding the 2015–16 IEP. SRO Decision at 5–6, 41; SAC ¶¶ 16–17; Elia SMF ¶ 8; IHO Ex. 39; IHO Tr. at 860–63.[3] Pursuant to this agreement, Plaintiffs withdrew A.S. from the District's schools and enrolled him in the Newmeadow Preschool as a general education preschool student for the remainder of the 2015–16 school year, with a specified schedule of speech and occupational therapy. SAC ¶ 16; Dist. SMF ¶ 15; IHO Ex. 39.

In spring 2016, the District held a CSE meeting to complete an annual review and develop an IEP for A.S. for the 2016–17 school year, when he would be of compulsory attendance age and required to attend kindergarten. SRO Decision at 6; SAC ¶ 77; Elia SMF ¶ 9; Dist. SMF ¶ 19. A.S.'s IEP provided for him to attend the District's general education kindergarten class for the half-day that students without a disability typically attend kindergarten; in addition, it provided for A.S. to attend a special education class with a student to staff ratio not to exceed 12:1:1 (twelve students, with one certified special education teacher and one teaching assistant) for two hours per day (the District's "Connections" program). Dist. SMF ¶ 21; IHO Exs. 45, 46. In addition, A.S. would receive occupational and speech therapy six times per month. IHO Ex. 45 at 7. The IEP also recommended certain supplementary aids and services, program modifications, and accommodations. Id. at 7–8. The IEP did not specify that A.S. would be instructed pursuant to Applied Behavior Analysis ("ABA"), an instructional methodology

---

[3] The IHO Hearing Exhibits and IHO Hearing Transcript are included as files within the administrative record filed with the Clerk's office as Docket Numbers 31 and 32.

used with students with autism, as Plaintiffs had requested. SAC ¶ 24; Dist. SMF ¶ 22. However, the IEP did specify that school personnel would be trained in ABA. IHO Ex. 45 at 8. Unsatisfied with the IEP, Plaintiffs did not send A.S. to the District school for the 2016–17 school year until February 17, 2017. SAC ¶ 40; Dist. SMF ¶ 24. Instead, they home-schooled A.S., and also placed him in daycare part-time. SRO Decision at 42; SAC ¶ 40; IHO Tr. at 20–22.

On August 5, 2016, Plaintiffs filed a due process complaint regarding the 2016–17 IEP, alleging that A.S. "could not take advantage of an education not grounded in the principles of [ABA] [and] more specifically it was <u>unconditionally</u> clear that [A.S.] needed a comprehensive ABA program in order to make progress." IHO Ex. 1 at 1; Elia SMF ¶ 10; SAC ¶ 31; Elia SMF ¶ 10; Dist. SMF ¶ 23. Plaintiffs requested that A.S. either be reclassified to return to the preschool setting for 2016–17, or else that the District "establish an integrated ABA classroom." IHO Ex. 1 at 50–53. The parents indicated that the proposed ABA classroom must offer a full-day program, and that all therapists, special education teachers, and the school principal must be trained in function-based intervention and discrete trial training. Id. Further, the parents required that the "lead teacher" of the proposed ABA classroom have, "at a minimum," Board Certified Behavior Analyst ("BCBA") certification; that all assistants and therapists receive training in ABA interventions; and that the District acquire, with a "guaranteed minimum budget of $25,000," "all necessary items to set up an ABA classroom." Id.

A hearing before an IHO regarding the due process complaint was held in October 2016. SRO Decision at 9; SAC ¶ 42; Elia SMF ¶ 11; Dist. SMF ¶ 6–7; IHO Tr. On December 30, 2016, the IHO ruled that the District had provided A.S. with a FAPE as required by law. Dkt. No. 82-2 ("IHO Decision"); SRO Decision at 9; SAC ¶ 42; Elia SMF ¶ 12.

Plaintiffs appealed. On April 6, 2017, SRO Bates determined on April 6, 2017, that while the IEP was otherwise upheld, the District had failed to satisfy its least restrictive environment ("LRE") requirement for the 2016–17 school year. SRO Decision at 43; Dist. SMF ¶ 27. SRO Bates ordered the District to determine the extent to which A.S. should be placed with non-disabled peers in order to satisfy the LRE required under IDEA. Id. The SRO also found that the IHO erred by sua sponte concluding that the District did not commit any procedural violations, when the parties had not themselves raised that issue. SRO Decision at 19. The SRO also found that Plaintiffs were not owed any tuition reimbursement for their home instruction, whether as a pendency placement or unilateral placement. Id. at 41–42. The SRO also upheld the IHO's evidentiary decisions. Id. at 14–16.

After the SRO Decision and commencement of this action, the District's CSE developed a new IEP for A.S. for the 2017–18 school year, when he was in first grade; and his parents did not appeal that IEP. Dist. SMF ¶ 40.

## C. Procedural Background

Plaintiffs filed suit on May 9, 2017, seeking review of the SRO decision regarding A.S.'s 2016–17 IEP, and challenging the state regulations that implement IDEA. Compl. Plaintiffs submitted the Amended Complaint on July 7, 2017. Am. Compl. On August 3, 2017, Plaintiffs submitted an ex parte motion for a preliminary injunction, seeking payment for expenses related to a proposed family move to a different school district, including "reasonable increases in cost of living, all rent increases necessary . . . and income and benefits lost . . . as a result of relocation." Dkt. No. 27 ("PI Motion") at 5.

The Court denied the PI Motion on August 7, 2017. Dkt. No. 29 ("August Order"). The District answered the Amended Complaint on August 11, 2017, Dkt. No. 36 ("Answer"), and SRO Bates and Elia jointly moved to dismiss, Dkt. No. 35 ("Motion to Dismiss").

On December 13, 2017, the Court granted in part and denied in part the Motion to Dismiss. Dkt. No. 71 ("December 2017 Order") at 16. Specifically, the Court dismissed with prejudice all claims against Bates, on the basis of absolute judicial immunity. Id. at 7–9, 16. Further, the Court dismissed against Elia all state law claims, all claims under § 504 of the Rehabilitation Act, and all claims under IDEA. Id. at 16. The Court granted Plaintiff leave to amend. Id. at 15.

On January 22, 2018, Plaintiff filed a Second Amended Complaint, to which Defendants filed answers. SAC; Dkt. Nos. 78 ("District Answer"), 79 ("Elia Answer"). After settlement talks proved unfruitful, Dkt. Nos. 82, 84–85, 89, Defendants filed the Summary Judgment Motions now before the court, District SJ Motion; Elia SJ Motion. Plaintiffs have not responded. Docket.

## III.   LEGAL STANDARD

### A.  Mootness

Defendants raise mootness as a defense against certain of Plaintiffs' claims regarding the 2016–17 IEP, since that school year has passed, and Plaintiffs have not contested the subsequent IEP. Dist. Mem. at 13.

A party seeking to have a case dismissed as moot bears a heavy burden. Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50, 59 (2d Cir. 1992). There is no question that "Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.' " U.S. Parole Comm'n v. Geraghty, 445 U.S. 388,

7

395 (1980). However, the Supreme Court has "recognized an exception to the general rule [regarding mootness dismissals] in cases that are capable of repetition, yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982).

Judicial review of IEP challenges "invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings." Rowley, 458 U.S. at 186 n. 9. During the time of appeal and court review, a student has typically moved on to the subsequent grade. Such advances in grade level during the slow machinations of an IEP appeal should not eliminate the possibility of judicial review on mootness grounds. Here, the controversy over A.S.'s special education services is reasonably likely to recur. A.S. has another decade of schooling, during which he will continue to receive special education services, his parents will likely continue to perceive ABA methodology as essential, and the district will likely continue to resist imposing a fully integrated ABA program of the sort the parents have sought. Plaintiff's issues with 2016–17 IEP are therefore "capable of repetition, yet evading review," and are not moot. Independent of the Plaintiffs' claim for review of the SRO Decision on the merits, this case presents a live controversy because Plaintiff seeks compensatory education benefits arising out of A.S.'s statutory pendency entitlements.

**B. IDEA claims**

"IDEA actions generally are resolved on summary judgment." S.H. v. N.Y.C. Dep't of Educ., No. 10-CV-1041, 2011 WL 666098, *2 (S.D.N.Y. Feb. 15, 2011). Summary judgment in the IDEA context, however, is unique. "[T]he procedure is in substance an appeal from an administrative determination, not a summary judgment motion." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012) (internal quotation marks and brackets omitted). It "involves

more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009) (internal quotation marks omitted). The inquiry is directed at "whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ., 950 F. Supp. 2d 494, 498 n.1 (S.D.N.Y. 2013) (internal quotation marks omitted).

When considering a summary judgment motion filed in connection with an IDEA action, "a district court must conduct an independent review of the administrative record, along with any additional evidence presented by the parties, and must determine by a preponderance of the evidence whether the IDEA's provisions have been met." Id. at 498; 20 U.S.C. § 1415(i)(2)(c). This independent review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206. Rather, the review is "circumscribed;" a district court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." A.C. ex rel. M.C. 553 F.3d at 171 (internal quotation marks omitted). This standard of review "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." M.H., 685 F.3d at 244 (internal quotation marks and alterations omitted).

When "the decisions of an IHO and a SRO conflict, the Court should generally defer to the SRO's decision, as the final decision of the state authorities." F.B. v. N.Y.C. Dep't of Educ.,

923 F. Supp. 2d 570, 578 (S.D.N.Y.2013). This is particularly true "when the state officer's review has been thorough and careful." Id. However, where the district court "appropriately concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges." Id. Further, "courts should defer to the IHO's analysis when considering an issue not reached by the SRO." C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 77 (2d Cir. 2014).

The Second Circuit has provided guidance as to which administrative determinations are due most deference. "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." M.H., 685 F.3d at 244. "Decisions involving a dispute over an appropriate educational methodology should be afforded more deference than determinations concerning whether there have been objective indications of progress." Id. Determinations that are "grounded in thorough and logical reasoning" merit more deference than those that are not. Id. Finally, "the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO"—the case here—"than when the district court has before it additional evidence that was not considered by the state agency." Id.

In sum, "judicial review of administrative decisions under the IDEA requires the court (1) to conduct an independent review of the administrative record, (2) to use a preponderance of the evidence standard, and (3) to give deference to the administrative determinations, particularly

that of the SRO." <u>F.L. ex rel. F.L. v. N.Y.C. Dep't of Educ.</u>, No. 11-CV-5131, 2012 WL 4891748, at *5 (S.D.N.Y. Oct. 16, 2012), <u>aff'd</u>, 553 F. App'x 2 (2d Cir. 2014) (summary order).

## C. Non-IDEA claims

As to Defendants' Motions for Summary Judgment on non-IDEA claims, the standard summary judgment standard of review applies. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court may ignore factual disputes that are "irrelevant" or "unnecessary." <u>Id.</u> "Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "In making that determination, the court is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004).

## II.     DISCUSSION

Plaintiffs list fifteen "causes of action." SAC ¶¶ 77–192. The first through seventh causes of action are "in substance an appeal," <u>M.H.</u>, 685 F.3d at 226, pursuant to IDEA, of the SRO Decision regarding the District's 2016–17 IEP on the basis of various alleged errors. SAC ¶¶ 77–137, 189–92. Plaintiffs' ninth, tenth, and fifteenth causes of actions—asserted against the District and Elia—assert that New York's regulations regarding students with disabilities,

codified at 8 N.Y.C.R.R. § 200, violate § 504 of the Rehabilitation Act, IDEA, and the

Fourteenth Amendment's vagueness doctrine. SAC ¶¶ 137–92. Plaintiffs' other claims (the

eighth and eleventh through fourteenth causes of action), raise placement and procedural issues

that were not raised in Plaintiffs' August 5, 2016 due process complaint, id. ¶¶ 59–62, 185–88.

and are therefore unexhausted and not properly before this Court. Cave v. E. Meadow Union Free

Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (citing § 1415(i)(2)(A)).

## A. IDEA Appeal

The SRO's 44–page decision reflects a comprehensive review of the record and

articulates clear explanations for each conclusion. It parses the parties' arguments in great detail

and contains ample citations to the record in support of each finding. The SRO recognized that

Plaintiffs' primary dispute was that the 2016–17 IEP did not specify "a full-day, integrated

intensive ABA program, modeled on the preschool program, and that provided the student with

40 hours per week of intensive ABA." SRO Decision at 33.

The SRO addressed the student's educational needs and whether those were such that

only instruction utilizing the ABA methodology would enable his educational progress. The SRO

properly noted that, generally, an IEP does not specify a methodology, but instead leaves that

decision to the school. Id. at 35; see F.L., 2012 WL 4891748, at *9 ("[P]arents are not entitled to

choose an educational methodology under the IDEA."). The SRO examined the hearing record

and concluded that there was no evidence in the record that the student "required—in other

words be exclusively limited to—an intensive ABA program." SRO Decision at 36–39.

The record, amply cited by the SRO, supports this conclusion, showing that the student

had already received instruction using both ABA and non-ABA methodologies, and made

progress in individual and small group settings, as well as in larger group settings with adult support. Id. at 33–39. From September 2015 through November 2015, A.S. attended the District's half-day, integrated kindergarten, and the Connections special education class for the remainder of the day. IHO Tr. at 207–08, 211, 466; IHO Ex. 28 at 1, 7. At the impartial hearing, the special education teacher who taught the Connections class testified that when A.S. started the Connections program in September 2015, he was "very quiet" and needed extensive support to sit and attend the mainstream classroom. IHO Tr. at 207–14. However, the evidence in the record shows that by mid-October, A.S. began performing his morning routine more independently, including getting his own snack, sitting at the table and waiting for directions, waiting to be called for lunch with no prompts, and following the calendar routine. IHO Ex. 30, IHO Tr. at 211–12. Further, A.S.'s November 2015 speech-language update showed "steady progress," and indicated that he had increased his "use of English words" throughout the school day, including by "labeling school items, a variety of animals, action words, and body parts, as well as answering questions." IHO Ex. 33 at 3. A cognitive skills update also detailed A.S.'s progress in following routines and acting independently. Id. at 4. And while Plaintiffs have argued that A.S.'s behavior declined during that period, testimony by his special education teacher as well as a language pathologist noted his progress in this area as of November 2015. IHO Tr. at 236, 591, 597, 603, 605–07; IHO Ex. 35 at 4. Finally, the preschool speech-pathologist testified that A.S. made progress in both ABA and non-ABA approaches. IHO Tr. 660–63, IHO Ex. 41.

As to the appropriateness of the Corrections program, the record also included testimony about the research-based strategies the Corrections program was based upon, and the training required of the District's special education teachers. IHO Tr. at 489, 956–65; IHO Ex. 50.

At the IHO Hearing, the parents highlighted a doctor's report that the school "should consider a comprehensive [ABA] approach." IHO Tr. at 529–30, 572; IHO Ex. P-JJ at 1; IHO Ex. 1 at 21. The parents indicated that the doctor believed that the ABA program was truly essential for A.S., but had felt uncomfortable stating this explicitly in a report. IHO Tr. 530–32. Yet the doctor did not testify at the IHO Hearing, and the SRO could reasonably discount the parents' characterization of the doctor's stance given the doctor's report. SRO Decision at 36.

The Court finds that the SRO Decision was "thorough and careful" and therefore entitled to deference. M.H., 685 F.3d at 241. With that due deference in mind, the Court will now review each of the IDEA violations alleged by Plaintiff. In sum, though, after a review of the administrative record and the parties' filings in this litigation, the Court finds, by a preponderance of the evidence, that the requirements of IDEA "have been met" here. D.C. ex rel. E.B., 950 F. Supp. 2d at 498.

*1. Pendency Placement (First Cause of Action)*

Plaintiffs allege that the SRO erred in his determination regarding A.S.'s "pendency placement." SAC ¶¶ 77–81; SRO Decision at 41. Plaintiffs claim that A.S.'s pendency placement was home-based instruction, and Plaintiffs are therefore due reimbursement for that home-based instruction. Id.

IDEA requires that a student remain in his or her "then-current educational placement," unless the school and parents otherwise agree, during the pendency of an impartial hearing and

any subsequent appeals. § 1415(j). "[Section 1415(j) represents] Congress's policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Mackey ex rel. Thomas M., 386 F.3d at 160–61 (internal quotation marks omitted). The "current" program has been understood as that "described in the child's most recently implemented IEP." Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004). And the relevant "placement" has been interpreted to mean the "same general level and type of services . . . [or] type of educational program" described in the last IEP, not the right to placement at a particular school. T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 171 (2d Cir. 2014) (internal quotation marks omitted). However, any pendency so created will be superceded if there is an agreement between the parties on placement during the course of a proceeding, whether or not it is reduced to a new IEP. Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 137 F. Supp. 2d 83 (N.D.N.Y.2001), aff'd, 290 F.3d 476, 484 (2d Cir. 2002), cert denied, 537 U.S. 1227 (2003). Otherwise, if parents "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, [they] do so at their own financial risk." Sch. Comm. of Town of Burlington v. Dep't of Ed., 471 U.S. 359, 373–74 (1985).

Plaintiffs filed their due process complaint in early August 2016. SRO Decision at 5; SAC ¶¶ 36, 77; IHO Ex. 1. The SRO Decision identified A.S.'s October 22, 2015 IEP as the then-current educational placement as of the filing of the due process complaint. SRO Decision at 41; IHO Ex. 33. The SRO had sufficient basis for such a finding. As the SRO explained, the parents, in their IHO Hearing testimony, "essentially agreed" that this was the last agreed-upon

IEP. SRO Decision at 41; IHO Tr. at 860–63. While the parents filed complaints regarding the October 22, 2015 IEP, those complaints were withdrawn through a December 4, 2015 resolution agreement, which amended the October 22, 2015 IEP by specifying New Meadow as the place of instruction. SRO Decision at 41; IHO Ex. 39; IHO Tr. at 860–63. In the IHO Hearing, A.S.'s father referred to the resolution amending the IEP as the most recent IEP. IHO Tr. at 860–63. No later IEP or agreement appears in the record, let alone one that suggests, as Plaintiffs assert, SAC ¶¶ 77–81, that A.S.'s home-schooling was the student's pendency placement.

It is true that, as of the time of the August 2016 due process complaint, A.S. had aged out of the New Meadow pre-school, meaning his IEP would have to continue at the District kindergarten. However, that change in location did not nullify the status of A.S.'s October 22, 2015 IEP (as modified by the resolution agreement) as the "then-current educational placement," because an IEP does not grant the right to placement at a particular school, but rather the same general level and type of services. T.M. ex rel. A.M., 752 F.3d at 171. Accordingly, the SRO had sufficient basis to find that the modified October 2015 IEP was the then-current educational placement.

 Accordingly, the Court finds that the preponderance of the evidence in the administrative record supports the SRO denial of Plaintiffs' request to reimbursement on a pendency basis for the cost of home instruction. SRO Decision at 41. Plaintiff's first cause of action is therefore dismissed.

### 2.  Unilateral Placement (Second Cause of Action)

Plaintiffs also argue, in the alternative, that they should be reimbursed for A.S.'s home-based ABA instruction for the period August 29, 2016 through February 7, 2017, since that

instruction qualified as a permissible unilateral placement. SAC ¶¶ 82–89; SRO Decision at 41–42.

A parent who believes that his or her disabled child has been denied a FAPE under IDEA may unilaterally move that child to a private educational placement and then seek reimbursement from the school district. § 1412(a)(10)(C)(ii); Hardison v. Bd. of Educ., 773 F.3d 372, 376 (2d Cir. 2014); see also Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369–70 (1985) ("Burlington" ); Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12 (1993) ("Carter" ). To determine whether a parent is entitled to reimbursement for a unilateral placement, a court applies the three-pronged Burlington/Carter test, "which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." C.F. ex rel. R.F., 746 F.3d at 73.

Parents bear the burden of demonstrating that the unilateral placement was appropriate for the child's needs, even if the IEP was inappropriate. M.H., 685 F.3d at 246. Nevertheless, "the standard applied to determine the appropriateness of parental placement is less restrictive and subject to fewer constraints than that applied to the school authorities." C.B. v. N.Y.C. Dep't of Educ., No. 02-CV-4620, 2005 WL 1388964, at *53 (E.D.N.Y. June 10, 2005). For instance, "an appropriate private placement need not meet state education standards or requirements," and parents "may not be subject to the same mainstreaming requirements as a school board." Frank G., 459 F.3d at 364. Nonetheless, IDEA's "requirement that an appropriate education be in the mainstream to the extent possible remains a consideration that bears upon a parent's choice of an alternative placement." S.H. v. N.Y.C. Dep't of Educ., No. 09-CV-6072, 2011 WL 609885, at *9

(S.D.N.Y. Feb. 18, 2011). Subject to those limited exceptions, "the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement." Frank G., 459 F.3d at 364. "Ultimately, the issue turns on whether a placement—public or private—is 'reasonably calculated to enable the child to receive educational benefits.'" Id. (quoting Rowley, 458 U.S. at 207). Further, "a unilateral private placement cannot be regarded as proper under the IDEA when it does not, at a minimum, provide some element of special education services in which the public school placement was deficient." Frank G., 459 F.3d at 365 (internal quotation marks and brackets omitted).

Here, the only deficiency with the IEP the SRO identified was the district's failure to consider the extent to which its program constituted a removal from the general education setting in a manner inconsistent with A.S.'s LRE. SRO Decision at 25–33, 42–43. As the Court upholds the SRO conclusion that the only deficiency in the IEP was the LRE issue, the unilateral placement can only be regarded as proper, or appropriate, if the unilateral placement addressed that LRE deficiency. See Frank G., 459 F.3d at 365.

The parents' unilateral placement did not address this deficiency. The parents did not place A.S. in a more general education setting or in a plausibly less restrictive environment. Rather, the parents provided A.S. home-based instruction that removed him even further from a general education setting. SRO at 42–43. Since this unilateral placement did not provide the element of special education services in which the District was deficient, it was not "proper." Frank G., 459 F.3d at 365.

Accordingly, the SRO had sufficient grounds to deny Plaintiffs' claim for reimbursement for A.S.'s unilateral placement, and Plaintiff's second cause of action is dismissed.

### 3. Attorneys' Fees (Third Cause of Action)

Plaintiffs seek attorneys' fees to compensate them for their pro se legal work in this action. SAC ¶¶ 90–95. Even where attorneys' fees are provided by statute, a pro se litigant who is not an attorney is not entitled to an award of such fees. Heldman v. Sobol, 846 F. Supp. 285, 290 (S.D.N.Y. 1994). Plaintiffs are proceeding pro se and are not attorneys, and are therefore not due any attorneys' fees. Therefore, this claim is dismissed.

### 4. SRO's Bias (Fourth Cause of Action)

In their fourth cause of action, Plaintiffs claim that the SRO "contort[ed] much of the facts, tweaking them in a manner favorable for the Defendants." SAC § 96. Plaintiffs do not, as part of this cause of action, specify what "facts" were "contorted." Id. Rather, Plaintiffs appear to argue that the other alleged other errors cited in their papers—which form the basis for many of their other causes of action—were made intentionally and reflect the SRO's bias against Plaintiffs. Id. Such conclusory allegations of SRO bias have been uniformly rejected by courts. See M.S. ex rel M.S. v. N.Y.C. Dep't of Educ., 734 F. Supp. 2d 271, 279 (E.D.N.Y. 2010) (rejecting plaintiff's contention of SRO bias); E.Z.-L. ex rel. R.L. v. N.Y.C Dep't of Educ., 763 F. Supp. 2d 584, 595 n.7 (S.D.N.Y. 2011), aff'd sub nom. R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167 (2d Cir. 2012) (same). The Court, having found the SRO Decision to be well supported by the record, finds no indication in the record of any bias, and dismisses this claim.

### 5. Evidentiary Decisions (Fifth Cause of Action)

In their fifth cause of action, Plaintiffs claim that the SRO erred by upholding the IHO's decision to not admit particular exhibits offered by Plaintiffs during the IHO Hearing. SAC ¶¶ 97–106; SRO Decision at 14–16; IHO Tr. at 56–108. Specifically, Plaintiffs claim that the SRO improperly excluded as exhibits academic publications that detailed methodologies including ABA. Id. ¶ 100. Plaintiffs further allege that the IHO's evidentiary decisions demonstrated bias. Id. ¶ 98.

New York State regulations require that an IHO "exclude evidence that he or she determines to be irrelevant, immaterial, unreliable, or unduly repetitious." 8 N.Y.C.R.R. § 200.5(j)(3)(xii)(c). IHOs have "broad discretion" in how they conduct the impartial hearing. M.M. v. N.Y.C. Dep't of Educ., No. 15-CV-5846, 2017 WL 1194685, at *7 (S.D.N.Y. Mar. 30, 2017).

The IHO did not exclude Plaintiff's academic publications categorically, but instead advised A.S.'s parents that such publications might later be entered into the hearing record as evidence, once proper foundation had been elicited from a witness. Id. at 56–60, 64–67, 71–72, 92, 97–98. The parents neglected to offer such foundation through further testimony. Given the lack of foundation proffered, as well as the redundant nature of some of the material, the SRO had sufficient basis to uphold the IHO's discretionary evidentiary decisions. Accordingly, Plaintiffs' evidentiary claim is dismissed.

### 6. The Right to a Particular Methodology (Sixth Cause of Action)

Plaintiffs contend that the SRO erred in finding that IDEA does not give A.S. a right to a particular educational methodology—in this case ABA instruction—in his IEP. SAC ¶¶ 107–122.

An IEP need not "mention evaluative methods or a particular teaching methodology" to be "substantively adequate." <u>K.L. ex rel. M.L. v. N.Y.C. Dep't of Educ.</u>, 530 F. App'x 81, 86 (2d Cir. 2013). Further, "parents are not entitled to choose an educational methodology under the IDEA." <u>F.L.</u>, 2012 WL 4891748, at *9. Rather, "teaching methodologies are typically left to the discretion of classroom teachers." <u>S.B. v. N.Y.C. Dep't of Educ.</u>, 174 F. Supp. 3d 798, 805 (S.D.N.Y. 2016).

Given the discretion afforded schools in choosing methodologies, and the record's support for the adequacy of the special education methods used, the SRO did not err in finding that A.S. had no right to an exclusively ABA-based IEP plan. This claim is therefore dismissed.

### 7. Annual Goals (Seventh Cause of Action)

Plaintiffs claim that the SRO erred in upholding the annual goals set by A.S.'s 2016–17 IEP, which relied on inaccurate representations of A.S.'s present level of performance provided by the District. SAC ¶¶ 123–33.

An IEP must include "a statement of measureable annual goals, including academic and functional goals." § 1414(d)(1)(A)(i)(II). These goals must be "designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and to meet each of the child's other educational needs that result from the child's disability." <u>Id.</u>

The SRO had sufficient basis to find that the present abilities detailed in the IEP accurately reflected A.S.'s abilities. The SRO Decision details at length the basis for the goals included in A.S.'s 2016–17 IEP. SRO Decision at 21–25. The CSE convened on two dates to develop the IEP. The first meeting included three staff members from A.S.'s then-current

preschool: the executive director, the student's speech-language pathologist, and the director of ABA services. SRO Decision at 21; IHO Tr. at 244, 478–79, 498–99, 660, 685–86, 773–79, 1017, 1151–52, 1192–93. Several witnesses at the impartial hearing testified that preschool staff, who would have observed A.S. in school, provided input regarding A.S.'s present levels of performance for the draft IEP. SRO Decision at 21–22; IHO Tr. at 238, 246, 278–79, 492, 498–502, 677–80, 779. And the hearing record includes evidence that the CSE discussed, reviewed, and revised the annual goals ultimately included in the IEP, in consultation with the parents. SRO Decision at 22. At the IHO Hearing, the special education teacher who attended the June 2016 CSE meeting testified that, when the CSE "started going through the goals," the parents indicated that A.S. could "already do these things," and that the CSE then rewrote the goals to be more consistent with A.S.'s apparent capabilities. IHO Tr. at 244–45; IHO Ex. 46 at 1, 6. Similarly, the special education director testified that the CSE modified the IEP's present levels of performance and goals to address parental concerns. SRO Decision at 22–23; IHO Tr. at 479–80. The SRO thoroughly explained the close alignment between the present levels of performance and the goals in the IEP. SRO Decision at 23–25; IHO Ex. 45 at 2–8. Accordingly, this claim is dismissed.

**B. N.Y.C.R.R. Claims against Elia and the District**

Plaintiffs' claim in their ninth, tenth, and fifteenth causes of action that the New York regulations regarding students with disabilities, codified at 8 N.Y.C.R.R. § 200, *et seq*, violate IDEA and the Fourteenth Amendment. SAC ¶¶ 137–84, 189–92. These claims do not involve factual disputes, but rather questions of law regarding the text and interpretation of § 200 and IDEA.

*1. LRE Requirement (Ninth Cause of Action)*

Plaintiffs argue, in what they label the ninth cause of action, that § 200, which was promulgated by Elia, and carried out by the District through A.S.'s IEP, improperly "segregates" students with disabilities so that they are "likely to be permanently disabled," in violation of IDEA. SAC ¶¶ 137–152. Essentially, Plaintiffs claim that § 200 does not comply with IDEA's LRE requirement that, to the maximum extent appropriate, disabled children be educated with nondisabled children. § 1412(a)(5)(A).[4]

The Second Circuit has explained that New York "has set forth regulations to implement the goals of the IDEA, which 'appear to track the IDEA closely.'" Frank G., 459 F.3d at 363. In fact, IDEA and § 200 *both* require that, to the "maximum extent appropriate," each child be educated in the LRE, § 1412(a)(5)(A); § 200.6(a)(1), 200.1(cc), and IDEA's LRE requirement "is embodied in both federal and state regulations." Jennifer D. v. N.Y.C. Dep't of Educ., 550 F. Supp. 2d 420 (S.D.N.Y. 2008). Thus, Plaintiffs' claim that § 200 does not comply with IDEA's LRE requirement fails as a matter of law, and is dismissed.

*2. Void for Vagueness (Tenth Cause of Action)*

Plaintiffs assert that § 200 is unconstitutionally vague, in violation of the Fourteenth Amendment and IDEA. SAC ¶¶ 153–84. Plaintiffs point to a handful a phrases that they find impermissibly vague. Plaintiffs complain that § 200.4(v)(b) directs that the "recommended program and services shall, to the extent practicable, be based on peer-reviewed research," but does not define "to the extent practicable" and "peer-reviewed research." SAC    ¶¶ 165–66.

---

[4] Plaintiffs also claim that by promulgating this regulation, Elia has violated § 504 of the Rehabilitation Act. SAC ¶ 138. However, the Court already dismissed this Rehabilitation Act claim against Elia. Dec. 2017 Order at 12–13.

Likewise, according to Plaintiffs, § 200.1 (cc) fails to sufficiently define "LRE." SAC ¶¶ 167–184. Plaintiffs also suggest that the regulations' failure to specify ABA as the one proper methodology for instruction of students with autism makes the regulations void for vagueness. SAC ¶¶ 180–82.

Void for vagueness challenges "are usually directed at criminal statutes and civil provisions which prohibit future individual conduct, particularly conduct protected by the First Amendment." Does v. Mills, No. 04-CV-2919, 2005 WL 900620, at *10 (S.D.N.Y. Apr. 18, 2005) (citing Boutilier v. I.N.S., 363 F.2d 488, 495 (2d Cir. 1966), aff'd, 387 U.S. 118 (1967)). However, New York's regulations implementing IDEA "are not criminal laws. They do not proscribe conduct protected by the First Amendment. Nor do they impose civil sanctions for certain types of conduct. Therefore the void-for-vagueness doctrine is not applicable." Id.

In any case, the phrases complained of are not vague. To the extent that the phrases are not defined by the regulations themselves, they are to be read according to plain-language meaning. See, e.g., Hobbs v. County of Westchester, 397 F.3d 133, 146 (2d Cir. 2005) (stating that "it is a general rule of statutory construction that, absent a definition in the statute, courts construe words in their plain and ordinary sense"). The fact that the regulations have been interpreted by courts in hundreds of cases without any apparent suggestion of their incomprehensibility suggests that they are not vague. Rather, the regulations, in keeping with IDEA ensure that schools maintain some discretion over the choice of instructional methodologies.

Plaintiffs' vagueness claim therefore fails as a matter of law and must be dismissed.

### 3. IEP Goals (Fifteenth Cause of Action)

Plaintiffs argue in their fifteenth cause of action that § 200 violates IDEA by failing to include "reducing prompt dependence" and "increasing conversation ability with neurotypical peers" as guaranteed goals on IEPs. SAC ¶¶ 189–192. In other words, Plaintiffs claim that § 200 does not comply with IDEA's legislative purpose of "ensur[ing] that all children with disabilities have available to them a free public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." § 1400(d)(1)(A).

"IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy" and "the judiciary generally lacks the specialized knowledge and experience necessary to resolve [such] persistent and difficult [issues]." Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191–92 (2d Cir. 2005) (internal quotation marks and citations omitted).

Again, New York "has set forth regulations to implement the goals of IDEA, which 'appear to track the IDEA closely.'" Frank G., 459 F.3d at 363. And both IDEA and its state regulations require that each IEP include academic and non-academic goals, as well as evaluative procedures for measuring progress in achieving those goals. See § 1414(d)(1)(A)(i)(III) (directing that IEP include "a description of how the child's progress toward meeting the annual goals . . . will be measured"); § 200.4(d)(2).

The regulations represent a permissible educational policy choice by Defendants. They do not detail cookie-cutter goals for each type of disability, but instead reflect a more flexible standard for schools to work from, in keeping with IDEA's emphasis on "tailor[ing]" special education "to the unique needs of a particular child." Endrew F. ex rel. Joseph F. v. Douglas Cty.

<u>Sch. Dist.</u>, 137 S. Ct. 988, 994 (2017). The Court will not upend that scheme by imposing a particular set of goals for all students with A.S.D., as Plaintiffs seem to propose. Accordingly, this claim is dismissed.

### C. Unexhausted IDEA/Rehabilitation Act Claims (Eighth and Eleventh through Fourteenth Causes of Action)

Only after exhausting IDEA claims via due process complaint, the impartial hearing, and SRO appeal can an aggrieved party seek independent judicial review. <u>Cave</u>, 514 F.3d at 245. This exhaustion requirement for IDEA claims applies equally to relief available under other statutes such as the Rehabilitation Act. <u>Id.</u>, at 244 n.2. Exhaustion is jurisdictional, and a court is without jurisdiction to consider any claims not included in a plaintiff's initial due process complaint. <u>Id.</u> at 243. The purpose of the exhaustion rule is to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." <u>Id.</u> at 246.

There are, though, three exceptions to the exhaustion requirement: "Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." <u>Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.</u>, 297 F.3d 195, 199 (2d Cir. 2002).

Plaintiffs' eighth and eleventh through fourteenth "causes of action" were not raised in their initial due process complaint. IHO Ex. 1. The Eighth cause of action raises procedural issues not included in the due process complaint. SAC ¶¶ 134–37; SRO Decision at 17. The eleventh through fourteenth causes of action relate to A.S.'s placement during periods of time

other than the 2016–17 school year at issue here: the 2017–18 school year (eleventh cause of action, which Plaintiffs also frame as a Rehabilitation Act claim); the 2014–15 school year (twelfth cause of action); and the 2017 summer (fourteenth cause of action).[5] SAC ¶¶ 59–62, 185–88. Plaintiffs therefore failed to exhaust administrative remedies as required by IDEA and the Rehabilitation Act as to those claims; Plaintiffs have not argued that any exceptions to the exhaustion requirement exceptions apply. The Court is therefore without subject matter jurisdiction as to those claims, and must dismiss them. Cave, 514 F.3d at 245, 250.

### D. ADA Claims

Plaintiffs further allege a generalized ADA claim, though they do not link it to any of their specific "causes of action." SAC ¶ 1.

Even if the Court were to find a violation of IDEA, "such a violation, without more, would be insufficient to support a claim of disability-based discrimination under the ADA or Section 504 of the Rehabilitation Act." French v. N.Y. State Dep't of Educ., 476 F. App'x 468, 473 (2d Cir. 2011). Plaintiffs fail to show that the alleged discrimination is anything more than a rehashing of their allegations that Defendants failed to provide A.S. with a FAPE. Accordingly, Plaintiffs' ADA claim is dismissed.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motions for Summary Judgment (Dkt. Nos. 86, 88) are **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' claims are **DISMISSED in their entirety**; and it is further

---

[5] The SAC includes no "thirteenth" cause of action.

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action.

**IT IS SO ORDERED.**

DATED:      February 20, 2019
              Albany, New York

Lawrence E. Kahn
U.S. District Judge